plation.[2] *Fischer II* sought to reinvigorate the concept of county integrity as manifest in Section 33. We should not allow it to be distorted to achieve any other result. Section 33 of the Constitution of Kentucky is our responsibility and we should defend it.

For these reasons, I dissent.

GRAVES, J., joins this dissenting opinion.

GRAVES, Justice, dissenting.

The majority opinions in, *"Fischer I,"* *"Fischer II,"* and *"Fischer III,"* as well as the respective dissents to those opinions, represent good faith efforts by the Kentucky General Assembly and the courts of this Commonwealth to satisfy the increasingly difficult mandates of the United States Supreme Court generated by *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) and its progeny. It is my opinion that *Baker v. Carr* takes federalism too far in imposing the theory of "one man-one vote" as a constitutional requirement in legislative apportionment. Compliance with *Baker v. Carr* challenges the sovereignty of states and disrupts the integrity of many long established and well-functioning legislative districts. Compliance with the federal mandates has demonstrated that achieving the federally-mandated "one man-one vote" redistricting disrupts and impairs the identity, continuity, and sense of community of units of government established to represent a constituency having common interests. As demographics become more fluid, complying with *Baker v. Carr* will become progressively more difficult, if not impossible. In a mobile society where less than 50 percent of the people bother to vote, the egalitarianism desired in *Baker* is irrelevant.

Some political scientists have proposed that the United States Constitution should be amended to remove the jurisdiction of the United States Supreme Court to dictate political matters to the states. A solution worthy of exploration to the federal mandate is for the Commonwealth of Kentucky to amend its Constitution to allow each county, and perhaps each political unit in the larger counties, to be proportionately represented in the General Assembly. Another possible approach would be to borrow from the federal model whereby one house is apportioned to population and the other on political subdivision.

By placing isolated precincts from a county within a district containing a much larger county effectively precludes well-qualified citizens in the isolated precincts from ever being elected to the General Assembly due to demographic disadvantages.

**KENTUCKY BAR ASSOCIATION, Movant,**

v.

**Daniel DONSKY, Respondent.**

**No. 96–SC–303–KB.**

Supreme Court of Kentucky.

Sept. 26, 1997.

**SHOW CAUSE ORDER**

It is hereby ordered that on Tuesday, October 21, 1997, at the hour of 1:00 p.m. in the Kentucky Supreme Court courtroom, the Respondent, Daniel Donsky, shall appear and show cause why he should not be held in contempt of court for failure to comply with this Court's order dated June 20, 1996, requiring him to pay restitution in the amount of five hundred dollars ($500) to his client

---

2. The majority has made reference to the three-way division of Christian County as indicating a lack of partisanship in the multiple division of Pulaski and Laurel counties. What it failed to say is that while Christian County lacks sufficient population to have two representative districts, it is apportioned so as to virtually guarantee two representatives from Christian County. The 8th House District consists of 45 precincts, 38 of which are in Christian County (KRS 5.208), and the 9th House District consists of 275 precincts, 274 of which are in Christian County (KRS 5.209). Any suggestion that the Christian County division is comparable to the division of Laurel and Pulaski counties is misguided.

and to pay costs of this action in the amount of one hundred thirty-two dollars and seventy-four cents ($132.74).

All concur.

ENTERED: September 26, 1997.

/s/ Robert F. Stephens
Chief Justice

■

**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**Daniel DONSKY, Respondent.**

**No. 96–SC–303–KB.**

Supreme Court of Kentucky.

Nov. 14, 1997.

### SHOW CAUSE ORDER

It is hereby ordered that on Tuesday, January 13, 1998, at the hour of 1:30 p.m. in the Kentucky Supreme Court courtroom, the Respondent, Daniel Donsky, shall appear and show cause why he should not be held in contempt of court for failure to comply with this Court's order dated June 20, 1996, requiring him to pay restitution in the amount of five hundred dollars ($500) to his client and to pay costs of this action in the amount of one-hundred thirty-two dollars and seventy-four cents ($132.74).

All concur.

ENTERED: November 14, 1997.

/s/ Robert F. Stephens
Chief Justice

■

**Patricia Ward MARTIN, Appellant,**

v.

**PERSONNEL BOARD and Corrections Cabinet, Commonwealth of Kentucky, Appellees.**

**No. 95–CA–1258–MR.**

Court of Appeals of Kentucky.

Oct. 3, 1997.

Case Ordered Published by Supreme Court Jan. 14, 1998.

Discretionary Review Denied by Supreme Court Jan. 14, 1998.

